UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **THOMAS WOOD**, | ) | Case No.  5:06 CV 2591 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **SUMMIT COUNTY FISCAL OFFICE,** | ) | |
| et. al., | ) | (Regarding ECF # 49) |
| | ) | |
| Defendants, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Thomas Wood, who had worked  for 27 years originally at the Summit County Auditor and later at the Summit County Fiscal Office, was fired from his position as systems software analyst in the Information Systems Department on December 2, 2005, when Wood was 53 years of age. Defendant John Donofrio is an employee of Summit County, and serves as its Fiscal Officer, and he is the final decision-maker on all personnel decisions, including pay levels, promotions, discipline and termination. Suit  is brought against him in both his individual and official capacities. Wood  instituted this action against his former employer on October 25,2006, and has since filed his second amended complaint adding John Donofrio[1] on March 19, 2007. As amended he alleges age discrimination under both federal and state law for failure to promote in 2003 and again in 2004 (Counts I&II), retaliation under both state and federal law for filing discrimination claims (Count III), violation of federal and state due process, Wood's Fifth Amendment rights, and his First Amendment rights in suspending and later terminating him from his position as an Ohio county employee (Counts IV, V & VI), a "*Monell*" claim (Count VII), a claim of hostile work environment

---

[1] Wood's first amended complaint was filed on February 14, 2007 without leave of court, and  corrected with obtaining leave to file his second amended complaint.

2

in violation of federal law (Count VIII), and a state law claim for intentional infliction of emotional distress (Count IX).

Defendants (as named in the second amended complaint), Summit County and John Donofrio, in his official and individual capacities, have moved for summary judgment (ECF #49), and Wood has responded (ECF #55).[2]  Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255.  The burden is upon the movant to demonstrate the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is

---

[2] Defendants actually caption their motion as one for both dismissal and summary judgment, but rely on evidence outside the pleadings. This is clearly a matter for summary judgment. See Fed. R.Civ. P. 12(d).

3

obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340. Once the nonmoving party has responded , the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001).

Wood begins complaining of being passed over for promotion in 2003 and again in 2004, due to his age and that the promotions were given to those under 40.  Wood filed an internal complaint with the Fiscal Office Head of Personnel, John Morgan, on January 24, 2005, complaining that he should be promoted and given a raise. (Defendants' Ex. 2.) He also requested that his supervisor be transferred because he believed the supervisor, June Garey, discriminated against older employees. (*Id*.). Wood filed another internal complaint on February 11, 2005, setting forth the same complaints and requests as in his previous complaint, but filed this complaint with the Appointing Authority, which was Defendant John Donofrio. (Defendants' Ex. 3.) These grievances were resolved unfavorably.

4

Wood then filed an internal complaint with the Summit County Equal Employment Office Compliance Officer, Roger Johnson, alleging age discrimination, retaliation, hostile work environment, and a violation of equal pay for equal work requirements on June 24, 2005 (Defendants' Ex. 4). After investigation, Mr. Johnson found no evidence to support any of Wood's complaints (Defendants' Ex. 5). On October 13, 2005, Wood was informed by Mr. Johnson of the Summit County EEO that he had investigated Wood's complaint and had determined that there was no age discrimination or unlawful retaliation. (*Id*., and Plaintiff's Ex. C.).

Wood does not contest that in January 2005, a directive was issue to employees of the Fiscal Office that they were not to re-enter their work area without specific permission to do so after using their magnetic key cards to "swipe-out." The office practice was for employees to swipe their key cards at the beginning and end of the work day for payroll purposes. Wood had both a key card and special security card. The security card allowed Wood access to a secured area where the county's computer servers were kept. In early October, 2005, June Garey (the focus of Wood's earlier age discrimination complaints) saw Wood in the office one evening between 5 p.m. and 6 p.m. (Garey depo at 53-54.) Ms. Garey acknowledged that in late 2004, when she was still Wood's supervisor, she had become upset with Wood because she perceived that Wood went over her head to get permission to take a training course that Ms. Garey had refused to allow Wood to take. ( Garey depo at 78-79). Even though Wood had complete, unrestricted access to all parts of the department, including the computer server room, and Chief of Staff Shelley Davis said she had no reason to suspect that Wood would do anything unlawful with the computers or the information stored in the

5

computers (Davis depo at 111), when Ms. Garey reported to her supervisor that she had seen Wood in the office after hours, the Fiscal Office began a criminal investigation of Wood.

Shortly after being informed of the unfavorable outcome of his complaint to the Summit County EEO, Wood was placed on paid administrative leave and escorted from his office by a sheriff's deputy. (Plaintiff's Ex. I.)  The notice informed Wood that he was being placed on leave for alleged misconduct, but the notice did not explain the nature of the alleged misconduct.( Defendants' Ex. 6). This "memorandum" oddly stated:

> This also serves to inform you that you have been recommended for disciplinary action, which could result in termination. This recommendation is based on allegations of misconduct, which constitute a ***Group III*** Offense of the Summit County Personnel Policy and Procedures manual. (Emphasis supplied).
> *Id.*

The Summit County Fiscal Office Personnel Policy and Procedures Manual, Section 8.3 .reads that Group III offenses, "may be defined as those infractions which are of a very serious nature or possibly a ***criminal nature*** . . .  (emphasis supplied)." (Defendants' Ex. 1).

Around this time, defendant John Donofrio asked the Summit County Sheriff to assign someone to investigate Wood's allegedly unauthorized presence in the building. Detective David Brown was assigned to investigate. He met with Mary Margaret Rowlands, Chief Deputy Fiscal Officer and Legal Counsel for the Summit County Fiscal Office, and another Fiscal Office official and was told that they were concerned that "information had been tampered with or removed from the computers." (Brown depo at 11). Det. Brown acknowledged in his deposition that had he found that  to be true, it definitely would have constituted criminal offenses. (Brown depo at 11).

6

On October 17, 2005, Wood received an e-mail from Ms. Rowlands informing him that his "repeated unauthorized presence in the Fiscal Office has been referred to the Summit County Sheriff for investigation." (Defendants' Ex. 7).

Wood was not correctly charged with an unauthorized presence on County property. which, had he been charged, would have been considered a Group II offense pursuant to the Summit County Fiscal Office Personnel Policy and Procedures Manual, Section 8.3. - Group II Offenses "(16) Unauthorized presence on County property." (Defendants' Ex. 1).  The prescribed penalty for a first offense of a Group II offense is instruction and cautioning and two or three-day suspension without pay. (*Id*.).  Group II offenses by definition are, "those infractions which are of a more serious nature than the Group I offenses and which, in turn, cause a more serious and longer lasting disruption to the organization. . . " (*Id*., Section 8.3, Defendants' Ex. 1). The personnel manual describes such infractions as disruptions, not offenses of a criminal nature. In short, there was disjunct between the notice Ms. Rowlands gave Wood of discipline for a "repeated unauthorized presence in the Fiscal Office," and referral to the sherif for investigation for a matter which according to County policy would at worst subject Wood to a three day suspension without pay. As Wood was later to discover Ms. Rowlands had misinformed him. Defendants later expressed fears that Wood had sabotaged the Summit County Fiscal Office by planting a virus in the computers and engaging in other forms of record destruction.(Unemployment Compensation Review Commission Hearing on September 28, 2006, TR. 25, Plaintiff's Ex. M).

Following Wood's forced departure, his hard drive was removed and given to a forensic service to be copied and analyzed. (Unemployment Compensation Review Commission Hearing on September 28, 2006, TR. 27-28, Plaintiff's Ex. M). A detective examined Wood's system logs, obtained his thumb drive and examined it, and these examinations took several months (*Id.*).So, defendants concerns went much farther than Wood's after-hour presence. Woods was not notified about his employer's concern over sabotage as the basis for placing him on administrative leave.

As a result of being informed that he was under investigation, Wood retained Attorney Dennis Thompson to represent him in his dealings with Summit County. On October 18, 2005, Wood received a telephone call from Det. David Brown of the Summit County Sheriff's Department. In a voice mail, Det. Brown informed Wood that he "had been elected to try to resolve the conflict that you have with your employer....They would like to either come up with a plan to bring you back or to resolve some issues." Det. Brown said in his voice mail message that he knew Wood had retained counsel and wanted to meet with Wood to "try to get this negotiation started and find out where both sides are." (Plaintiff's  Ex. J.)

On October 20, 2005, Wood had a telephone conversation with Det. Brown in which Det. Brown repeated that his role in Wood's dispute with his employer was that he was "the person who got elected to try to resolve the issue. That is my role." (Defendants' Ex. 8).  During this conversation, Det. Brown informed Wood that Wood was "not at this time" under criminal investigation. (*Id.*, pg.2).  Det. Brown, however, in deposition  acknowledged that if Wood came in and talked to him and admitted to something that the detective thought was a crime, he would have

8

arrested him on the spot. (Brown depo at 14, 18). Wood informed Det. Brown that he had retained an attorney and that all dealings should go through the attorney. Det. Brown indicated to Wood that he would attempt to set up an appointment with Wood through the attorney. (*Id.*).

On October 21, 2005, Wood was informed in a letter from Ms. Rowlands to Wood's attorney, Dennis Thompson, that if he did not meet with Det. Brown by October 26, 2005, he would be placed on unpaid administrative leave.(Defendants' Ex. 10, Plaintiff's Ex. K). This letter also for the first time stated, "As you know, the Fiscal Office has referred a breach of county computer security to the Summit County Sheriff for investigation." (*Id.*) Thus at that time the defendants expressly acknowledged that the reason for placing Wood on leave was not simply due to his unauthorized after-hour presence. Ms. Rowlands also informed Wood's attorney that defendants would not continue Wood's paid leave for any time he causes delay in their investigation.

In this October 21, 2005 letter to Wood's attorney, Ms. Rowlands acknowledged that Wood had a Fifth Amendment right not to speak to Det. Brown, but warned that if his client exercised that right, there could be job-related consequences. Her letter stated: "While the Fiscal Office cannot, nor would not, require Mr. Wood to waive his 5th Amendment privilege, his cooperation, or lack thereof, in this process will be a factor in any employment action affecting him."

On October 24, 2005, Ms. Rowlands sent a letter to Wood's attorney relating: "The Fiscal Office has referred this matter to the sheriff for investigation into suspected criminal conduct;" his failure to cooperate would be considered as stated in the prior letter; and, Wood would be placed on

9

unpaid leave beginning October 27, 2005 if he has not been interviewed by Det. Brown by that time.(Plaintiff's Ex L.)

On October 26, 2005, Chief of Staff Shelley Davis sent a "memorandum" subcaptioned "Notice of Intent to Discipline" on behalf of John Donofrio informing Wood that he had been recommended for disciplinary action which could lead to termination. The allegation of misconduct provided was:

> Insubordination, a violation of the Summit County Fiscal Office Personnel policy
> and Procedures Manual, Section 8.3, Group III Offense, # 12.

> (Defendants' Ex. 11)

Further, according to the memo, a pre-disciplinary hearing was scheduled for October 31, 2005 at 10 a.m. "to provide you an opportunity to respond to the above stated allegations" (*Id.*). The memo did not describe what conduct constituted the alleged insubordination. Going back to the policy and procedure manual, "Insubordination" is "refusing to perform assigned work or to comply with written or verbal instruction of the Supervisors." (Defendants' Ex. 1).

So, to this point Wood had been notified that he was being disciplined for"repeated" unauthorized presence by Ms. Rowlands' e-mail, breach of county computer security by Ms. Rowlands' letter, and now insubordination prior to the hearing scheduled for October 31, 2005.The most officious of these notices, the October 26, 2005 "Notice of Intent to Discipline" charged only "insubordination."

10

Woods wrote back to Ms. Davis and Ms. Rowlands stating that his attorney was not available, to advise him or attend the "pre-disciplinary conference," that the Fiscal Office had tampered with hearing procedures in the past, and that for these reasons he was waiving "my opportunity to have a pre-disciplinary conference" pursuant to Section 8.4.C. 3. Wood was correct in referring to a "pre-disciplinary conference," which is the name assigned to the County's hearing procedure. Defendants' Ex. 1).

On October 27, 2005, Det. Brown submitted a report on his investigation to Ms. Davis, which also included summaries of conversations Det. Brown had with Wood's attorney, in which it was reiterated that Wood would not talk to Det. Brown without an attorney. (Plaintiff's Ex. N). Det. Brown related that he first contacted Wood on October 18, 2005 leaving an answering machine message requesting a return call to arrange a meeting on October 20 or 21.  Wood's attorney Dennis Thompson returned the call, and when asked whether they could meet on October 21, 2005, the attorney stated he would need to speak with his client. Mr. Thompson also stated that he had a trial that would take three weeks, but he would try to make time. Det. Brown also asked Mr. Thompson to request a thumb drive taken by his client.  Later Wood called and stated he had not yet spoken to counsel, but discussed setting up a meeting for October 21, 2005, or the following week. Det. Brown related to Wood that this was not a criminal investigation at this time, and he was there to assist the county on security issues. Det. Brown further related with regard to a telephone call with Mr. Thompson on October 21, 2005, that Det. Brown requested a meeting for October 27 or 28, and "advised this was an employee being compelled to return to work and sit-down with is (*sic*)

11

employer." Mr. Thompson ended the conversation that he would need to talk with his client and get back to Det. Brown.  There were no communications after that.

On October 31, 2005, a pre-disciplinary conference  was held without Wood's presence. The issue was whether Wood's "refusal" to meet with Det. Brown constituted insubordination. Crystal Weddle, another Summit County employee, was the hearing officer for that hearing and she determined that there was just cause to discipline Wood for insubordination. See Weddle recommendations, Defendants' Ex. 13.

On November 9, 2005, defendant Donofrio and Ms. Davis sent a letter to Wood informing him of the hearing findings and:

> As a result, please be advised that, effective November 7, 2005, you are hereby suspended without pay from employment with the County of Summit Fiscal Office for thirty (30) consecutive days, during which time the Fiscal Officer will finalize a decision regarding your permanent employment status. In other words, this suspension is not to be construed as the final and total disciplinary action in this matter. The Fiscal Office expressly retains the right to impose additional discipline, including termination, as a result of this conduct.

 (Plaintiff's Ex. P).

On December 2, 2005, defendant Donofrio and Ms. Davis sent Wood a letter informing him that he was being terminated from employment.( Plaintiff's Ex. Q). Wood had not been afforded a  pre-disciplinary conference when the penalty was increased from the 30-day suspension to

12

termination. Ms. Rowlands acknowledged in her deposition that there is nothing in the policy and procedures manual that calls for tacking on additional penalties once probable cause has been determined, nor is there any provision in   the policy and procedures manual for adding to the penalty without a separate hearing. (Rowlands' depo. at 37). The decision to  terminate merely incorporated the October 31, 2005 pre-disciplinary conference ( Plaintiff's Ex. P, Q).

At the time of his termination, Wood was owed substantial vacation pay, which was supposed to have been paid to him upon leaving, regardless of his reason for leaving. He had accumulated 600 hours of vacation pay, equaling about $15,000. Summit County did not pay him this amount. Defendant Donofrio admitted in his deposition that this refusal to pay Wood his vacation pay upon separation was his decision, that it was subjective, not based on any policy, that it didn't matter to him whether the decision was contrary to Summit County policy and that it was based on his belief that Wood owed Summit County money for training courses Wood had taken. He also admitted that he did not know if the amount owed equaled the amount withheld. (Donofrio depo. at 40-47).

Wood appealed his termination internally, and on July 12, 2006, the Summit County Human Resources Commission affirmed Wood's termination. On April 12, 2006, Wood filed a complaint with the U.S. Equal Employment Opportunity Commission, alleging age discrimination and retaliation. On July 28, 2006, Wood was given a "right to sue" letter from the EEOC.

*Age Discrimination in Counts I & II- Statute of Limitations:*

13

Defendants have presented several arguments for dismissal of Woods federal and state age discrimination claims for failure to promote in 2003 and 2004. Their premise is that the age discrimination claims have been abandoned because the second amended complaint no longer refers to specific statutory provisions governing these claims, but does reference 42 U.S.C. §1983 and Title VII of the Civil Rights Act of 1964, *i.e.*, 42 U.S.C. §2000e-5. Defendants are reminded:

> The Federal Rules of Civil Procedure contain liberal pleading requirements. Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Rule 8(e) provides that "[n]o technical forms of pleading ... are required." Fed.R.Civ.P. 8(e). "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571, n. 3 (2d Cir.1988); accord *Greene v. City of Memphis*, 535 F.2d 976, 978-79 (6th Cir.1976) (holding failure to allege Section 1983 claim by name did not bar recovery under statute if allegations and proof supported claim).

*Quinn-Hunt v. Bennett Enterprises, Inc*., 122 Fed. Appx. 205, 206-207, 2005 WL 180966, 2 (6th Cir. 2005). Wood clearly raises age discrimination in violation of both federal and state law in this first two counts and relates factual allegations regarding two instances of failure to promote due to selection of individuals under the age of 40. He has not abandoned his age discrimination claims and substituted civil rights claims in their place.

Based on their incorrect assumption defendants mistakenly argue that these counts are untimely due to the two-year statute of limitation under 42 U.S.C. §1983 applicable to such claims in Ohio. See *LRL Properties v. Portage Metro Housing*, 55 F.3d 1097, 1104-05 (6th Cir. 1995). However, the first two counts are stale for another reason. There is a "dual statute of limitation" in that a plaintiff must file a court action within 90 days of receipt of the right to sue letter as required

14

under 29 U.S.C. §626(e), plus the plaintiff must timely present the claim to the administrative agency authorized to review the claim as required under 29 U.S.C. §626(d)(2). See  *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

Wood received his right to sue letter from the EEOC dated July 22,2006, and timely filed his case in federal court on October 26, 2006, within 90 days as required. See 29 U.S.C. §626(e), and *Forrest v. U.S. Postal Service*, 97 F.3d 137, 140-41 (6th Cir. 1996)("The 1991 Act amended the ADEA and now provides that a plaintiff must bring suit under the ADEA within 90 days after receiving notice that the administrative proceeding has been terminated.").

However, bringing stale claims expeditiously to court does not make the stale claims timely to prevent their dismissal. Wood did not file a claim with the EEOC until April 12, 2006 (See Defendants' Ex. 16). There is a 300 day time limit for filing acts of discrimination with the EEOC which arise in Ohio , as a "deferral state." See 29 U.S. C. §§626(d)(2), 633(b); *Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 111, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); *Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001)."[A]ny unlawful employment practice,. . . , must be presented to the EEOC within the period prescribed by statute" for this court to have jurisdiction. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, -U.S.-,  127 S.Ct. 2162, 2177, 167 L.Ed.2d 982 (2007).

15

Defendants also argue that Wood's state claim is stale under Ohio Rev. Code §4112.02(N) and its 180 day limit. Wood only responds that the events which occurred beginning with November 2005 were timely presented to the EEOC and filed. (Response pg. 21, ECF # 55). Accordingly, summary judgment should be entered on Wood's failure to promote age discrimination claims contained within Counts I and II and these claims should be dismissed for untimely presentation to the EEOC.

***Retaliation - Count III:***

Wood complains of retaliation for refusal to promote, pay inequity, change of cubicle, change in work hours, and withholding payment of vacation pay. Defendants, again adhering to their faulty premise that Wood's claims are now civil rights matters under §1983, contend that Wood's retaliation claim is barred "because Title VII, which contains its own retaliation provisions, serves as the exclusive remedy for Plaintiff's claims." (Motion pg. 11, ECF# 49).  Defendants are referred to the ADEA provision governing claims of retaliation:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C.A. § 623.

Defendants are also referred to its state counterpart under the Ohio Fair Employment Practices Act:

16

It shall be an unlawful discriminatory practice:
For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code  § 4112.02 (I).

Thus, Title VII of the Civil Rights Act is not the exclusive remedy for retaliation as defendants claim. Retaliation is also a subject under the ADEA and its state counterpart.

Defendants next argue to the 300 day restriction under Title VII 42 U.S.C. 2000e-5(e)(1) for timely filing of claims with the EEOC.  This restriction, as previously discussed, exists in ADEA under  of 42 U.S.C. §629(d)(2), which  defendants have calculated  as June 16, 2005.  Woods now raises numerous instances of alleged retaliation by his employer. However, his "particulars" submitted with the EEOC charge state only that he filed an internal complaint of discrimination in June 2005, met with a hearing officer in October 2005 who said that Summit County was "innocent of the charges I complained about," subsequently he was suspended for 30 days without pay on November 7, 2005, for failing to attend a pre-disciplinary hearing on October 31, 2005, terminated from employment on December 5, 2005, and as of April 21, 2006 denied vacation pay because Summit County was holding the money in an escrow account pending suit against him for the funds expended in training. (Defendants' Ex.16, 17).  Wood stated that the earliest date of discrimination was November 7, 2005. *Id.* Consequently, Wood's complaints of retaliation for refusal to promote, pay inequity, change of cubicle, and  change in work hours are not properly before this court.

17

However, his complaints over suspension in November 2005, termination and withholding of vacation pay are.

 "A charge of discrimination is sufficient if it contains 'a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' 29 C.F.R. § 1601.12(b), 63 FR 36128." *Davis v. Sodexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998).  This is not to say that these judicial proceedings are confined to the very words contained in the complaint to the EEOC, but that  "the judicial proceedings are limited . . .  to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Farmer v. ARA Services, Inc.,*  660 F.2d 1096, 1105 (6th Cir.1981),citing  *EEOC v. McCall Printing Co.*, 633 F.2d 1232 (6th Cir. 1980); and see *Davis*, 157 F.3d at 463. Wood does not demonstrate that several of the alleged materially adverse employment actions that he now avers occurred within this time or were mentioned in his EEOC charge.

Wood now attempts to introduce the October 13, 2005 suspension with pay as a materially adverse employment action. There are two reasons to reject Wood's argument. First, this particular grievance was not mentioned among the "particulars" in the EEOC complaint. Wood very clearly stated in his complaint to the EEOC that retaliation commenced with his November 2005 suspension without pay. Consequently, it is unexhausted, hence there is no federal jurisdiction over this matter. See *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. at 2177.  Second, Wood believes that a criminal investigation of him commenced at this point, but "a suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action."

18

*Peltier v. U.S.,* 388 F.3d 984, 988 (6th Cir 2004); *White v. Burlington N. & Santa Fe Ry. Co*., 364 F.3d 789, 803 (6th Cir.2004). Consequently, it does not support a *prima facie* case.

Similarly, Wood claims that a work schedule change was retaliatory. The Supreme Court has held that a schedule change may in some instances constitute a materially adverse employment action. See *Burlington Northern and Santa Fe Ry. Co.* , 548 U.S. at 69, 126 S.Ct. at  2415  ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."). Wood, though, has not demonstrated that it was materially adverse in his circumstances. He worked the same number of hours as before he complained, and had only a minor change in work beginning at 7:30 a.m. rather than 8:00 a.m.  Also, Wood has failed to exhaust this claim, as well as  the other claims, except for the defendants actions taken commencing with suspending Wood without pay in November 2005 as contained in the charge to the EEOC.

Turning to these actionable allegations of retaliation, under the burden shifting approach modeled upon *McDonnell Douglas / Burdine*, in order to establish a *prima facie* case for  retaliation under the ADEA, Wood must show: (1) that he engaged in protected activity; (2) that his employer had knowledge of his protected conduct; (3) that his employer took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distributing Co., Inc.,* 510 F.3d 587, 591 (6th Cir. 2007),

19

citing, *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir.2002).[3]  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination (citation omitted). " *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  "[T]he burden of establishing the prima facie retaliation case is easily met." *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The courts may look to Title-VII caselaw which "is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate . . . for interpreting the ADEA's anti-retaliation clause." *Fox,* 510 F.3d at 591, citing *Wathen v. General Elec.*, 115 F.3d 400, 404 n. 6 (6th Cir.1997);  *Butts v. McCullough*, 237 Fed.Appx. 1, 6 n. 3 (6th Cir.2007) (unpublished).


With regard to suspension without pay and termination, defendants do not challenge the existence of the first two elements of the *prima facie* case - engaging in protected activity and employer's knowledge.[4]  Defendants  argue Wood cannot show a causal nexus, so their position is that  Wood fails to sustain the fourth element of the *prima facie* test. As explained above, this

---

[3] See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), requiring plaintiff to establish *prima facie* case when case based on indirect evidence of discrimination before employer had burden to show that reason was legitimate and nondiscriminatory; and *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)(ultimate burden of proving discrimination rests with plaintiff.

[4] No formal complaint is required, and informal, even an oral complaint may be sufficient. See  *Delisle v. Brimfield Twp. Police Dept.*, 94 Fed. Appx. 247, 254-55 (6th Cir. 2004)(unpublished);  *EEOC v. Romeo Community Schs.*, 976 F.2d 985, 989 (6th Cir.1992).

20

analysis begins with Wood's November 7, 2005 suspension without pay. That is the first instance of conduct that was both exhausted and materially adverse.

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008).  However, the last of Wood's three age discrimination grievances was made to the Summit County EEO on June 24, 2005, but no materially adverse employment action was taken until nearly five months later. Defendants rely on *Cooper v. City of North Olmsted*, 795 F.2d 1254 (6th Cir. 1986), which held that the mere fact that an employee is discharged four months after filing a discrimination claim is insufficient to support a claim of retaliation. *Id.*, at 1272.

Wood's situation is somewhat similar to that in *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724 (6th Cir. 2006).  Randolph reported an assault at state juvenile detention facility on June 8, 1996  to her employer, but was placed on administrative leave on June 17, with her employment terminated as a result of her employer's investigation into Randolph's report. The labor relations officer investigating the incident heard rumors about Randolph sexually misbehaving in front of other inmates and a possible consensual relationship between Randolph and the inmate Randolph had accused of the assault and recommended that the Ohio Highway Patrol conduct an investigation. *Id.*, 453 F.3d at 730. The Ohio Highway Patrol conducted a criminal investigation into allegations of  Randolph engaging in sexual activity, concluded they were true and referred the

matter to the Pickaway County Prosecutor. *Id.* The prosecutor found insufficient evidence and took no action. Randolph, around this time, was hospitalized for being suicidal in July 1996, and was granted disability benefits. Nonetheless, Randolph's employment was terminated following a pre-disciplinary meeting on November 14, 1996, where she did not appear after her psychiatrist informed her employer that Randolph was "under a large amount of stress" and the meeting should be postponed for six months because it would be detrimental to her condition. *Id.*, at 730-31.

The Sixth Circuit in *Randolph* restated that temporal proximity in itself is insufficient to find a causal connection, but that "a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Id.*, 453 F.3d at 737. Randolph had established a causal connection with her placement on administrative leave coupled with her being subjected to rumors about inappropriate behavior. *Id.* In *Randolph* there was a nexus between plaintiff's complaint concerning a hostile work environment and her employer's investigation which derailed from the issue whether plaintiff had been subjected to a hostile work environment to whether she had engaged into inappropriate behavior. *Id.*, 453 F.3d at 737.

Wood's case, though, is a bit more complex. There are three instances of retaliation which are reviewable, unpaid leave, discharge, and refusal to pay Wood for unused accrued vacation. Wood need not put forth a case supported by a preponderance of the evidence at this stage. *Id.; Foster v. Arcata Assocs., Inc*., 772 F.2d 1453, 1459 (9th Cir. 1985). Wood has not shown a nexus between the Summit County Sheriff's investigation on the behest of defendants, which was used as the foundation for his unpaid suspension and termination. Viewed in a favorable light for Wood

22

there is no nexus to the age discrimination charges filed against Ms. Garey, and her subsequent conduct in reporting Wood's infraction of  being on site after hours without permission, which in turn led to defendants' request for Wood to meet with Det. Brown.

In short, Wood engaged in protected action on June 24, 2005 in filing his complaint of age discrimination and he was subjected to a materially adverse employment action on November 7, 2005 of unpaid suspension, subsequent discharge for"insubordination" for  not arranging to meet with Det. Brown for the investigation into the reason Wood remained on the premises.  Even more remote in time is defendants refusal to pay Wood his unpaid vacation pay. In both *Randolph* and *Mickey* adverse employment action was taken more proximate to assertion of statutory employment rights.  In Wood's construct of the facts, the retaliatory intent is not apparent. He relies on stale events and his October 13, 2005 paid suspension to show a causal connection, while proximate to the Summit County EEO decision, it did not constitute  a materially adverse employment action. Wood has not demonstrated a causal connection to these instances of materially adverse employment action and it becomes unnecessary to delve into the remaining elements of a prima facie case. [5]

---

[5]    The next steps following plaintiff's demonstration of a *prima facie* case :
. . . [U]nder the *McDonnell Douglas* framework "the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times." *Weigel*, 302 F.3d at 377-78 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant articulates such a reason, the plaintiff may then show that the defendant's stated reason "is merely a pretext for discrimination." *Id.* at 378. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). The "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir.2001) (internal quotations and citations omitted). To show an honest belief, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07

23

***Due Process Claims- Count IV:***

Presumably Wood is claiming a violation of federal "procedural" due process rights. As a classified civil service employee Wood "enjoyed a cognizable [property] interest in continuing employment absent cause for discharge", which the state could abrogate under appropriate procedures "only by observing the strictures of due process." *Loudermill v. Cleveland Bd. Of Ed.*, 721 F.2d 550, 559, *aff'd, sub nom. Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 537-540 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The United States Supreme Court set forth the procedural requirements for the pre-termination hearing of a public employee as follows:

> The essential requirements of due process, * * * are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation omitted.] The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. [Citations omitted.] To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id*., at  545-46.

The Supreme Court also held that, generally, the pre-termination hearing, "though necessary, need not be elaborate" and that "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.,* at 545. In reaching this decision, the Supreme Court recognized that Ohio law provides for a full post-termination hearing. *Id.,* at 546.

---

(6th Cir.1998).

*Mickey,* 516 F.3d at 526.

24

Defendants contend that in the instant matter Wood was informed of the reason for his paid administrative leave, which became a suspension, and ultimately, his termination (Defendants' Exs. 7, 8, 10, 11, and 18; Aff. of Mary Margaret Rowlands, p. 1; Aff. of Shelley Davis, p. 2). He was given the opportunity to hear the evidence his employer had for proposing discipline and an opportunity to respond.  These facts leave some question concerning the adequacy of the notice and explanation of the employer's evidence. As pointed out earlier the alleged reasons for the paid administrative leave was not the same as the subsequent reasons of "insubordination" for failing to meet with Det. Brown, used for both unpaid suspension and discharge. These first two elements are crucial. See  *Cleveland Bd. Of Educ*., 470 U.S. at  546 ;  *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120  (1997); *Singfield*, 389 F.3d at 565.


Wood argues that he was only notified of some unspecified Group III offense on October 13, 2005, and later on October 26, 2005 given a vague citation for "insubordination."  It has been long-established that the employer's evidence must be given at a reasonable time in advance of hearing. See  *Boals v. Gray,*775 F.2d 686, 689 (6th Cir. 1985). However, there is no formality involved. Caselaw is clear that there is no particular form of notice required- it can be oral or written. See *Gilbert v. Homar*,  520 U.S. at 929, 117 S.Ct. at 1811.  To this end, surrounding circumstances can reasonably supplement the deficiencies in the notice and explanation. See  *Humphrey v. Scott County Fiscal Court,*  211 Fed.Appx. 390, 392, 2006 WL 3392153, 1 (6th Cir. 2006) (Humphrey's arrest and prosecution sufficiently apprised him about the reasons for his termination.)

25

Ms. Rowlands wrote to Mr. Thompson on October 24, 2005 that "if Mr. Wood has not been interviewed by Det. Brown by Wednesday, October 26, 2005, his leave will be converted to unpaid leave beginning Thursday, October 27, 2005." (Plaintiff's Ex. L). This letter also forewarned about the consequences of lack of cooperation. *Id.* This letter was followed on October 26, 2005, the deadline date set by Ms. Rowlands, by  formal notice of intent to discipline for insubordination. During this time Wood knew that his attorney was attempting to set up a time for them both to meet with Det. Brown. While the October 26, 2005 notice was vague, combined with the contemporaneous letter to Wood's counsel from defendants' counsel, Wood was provided with adequate notice and explanation in advance of the hearing. There was no denial of due process.

Several other arguments remain relating to this claim and they are addressed as follows. First, defendants cite *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), for the proposition that there is a second prong to Wood's claim. *Vicory* stated, "in a §1983 case 'claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that the state remedies for redressing the wrong are inadequate." *Id.*, at 1066.  There is a second prong when plaintiff is confronted with a "random and unauthorized act" for which there could be no pre-deprivation process of notice and hearing:

> Under circuit precedent, a § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an "established state procedure that itself violates due process rights," or (2) a "random and unauthorized act" causing a loss for which available state remedies would not adequately compensate the plaintiff. *Macene v. MJW, Inc*., 951 F.2d 700, 706 (6th Cir.1991). A plaintiff alleging the first element of this test would not need to demonstrate the inadequacy of state remedies. *Moore v. Bd. of Educ. of Johnson City Sch*., 134 F.3d 781, 785 (6th Cir.1998). If the plaintiff pursues the second line of argument, he must navigate the rule of *Parratt v. Taylor*, 451 U.S. 527, 539, 101

26

S.Ct. 1908, 68 L.Ed.2d 420 (1981), which holds that a state may satisfy procedural
due process with only an adequate postdeprivation procedure when the state action
was "random and unauthorized." See *Macene*, 951 F.2d at 706.

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,*  442 F.3d 410, 433 (6th Cir.

2006), rev. on other grounds, 127 S.Ct 2489, 168 L.Ed.2d 166 (2007).


Wood's arguments clearly fall into the first category.  Defendants were acting pursuant to

established state procedures when they gave Wood notice, scheduled a pretermination hearing, i.e.

the "pre-disciplinary conference," and held that hearing. See *Mitchell v. Fankhauser*, 375 F.3d 477,

482-83 (6th Cir. 2004); *Silberstein v. City of Dayton*, 440 F.3d 306, 315-17 (6th Cir. 2006); compare

*Walsh v. Cuyahoga County*, 424 F.3d 510, 512 (6th Cir. 2005) (director of community health asked

Walsh to clean out her desk and submit a letter o f resignation  by Monday, a termination which was

not pursuant to established state procedure.).  *Vicory* does not apply here:

> The rule requiring a § 1983 plaintiff to show the inadequacy of a state's post-
> deprivation corrective proceedings, articulated by the Supreme Court in *Parratt v.
> Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), applies only where the
> deprivation complained of is random and unpredictable, such that the state cannot
> feasibly provide a predeprivation hearing. *Zinermon v. Burch*, 494 U.S. 113, 132,
> 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); see also *Moore v. Bd. of Educ.*, 134 F.3d
> 781, 785 (6th Cir.1998) (applying *Zinermon* holding in circumstances factually
> analogous to present case); *316 *Mitchell v. Fankhauser*, 375 F.3d 477, 481-84 (6th
> Cir.2004) (reaffirming Moore ). When a deprivation occurs through an established
> state procedure, "then it is both practicable and feasible for the state to provide
> pre-deprivation process, and the state must do so regardless of the adequacy of any
> post-deprivation remedy," whereas when a random and unauthorized deprivation
> occurs, "the pre-deprivation procedures are simply impracticable and an adequate
> post-deprivation remedy affords all the process that is due." *Walsh v. Cuyahoga
> County*, 424 F.3d 510, 513 (6th Cir.2005).

*Silberstein v. City of Dayton* , 440 F.3d at  315-316.

27

Wood's employment suspension and termination occurred after defendants consulted with counsel and were not random unauthorized deprivations.  As a result, Wood " need not show that the state's post-deprivation corrective procedure were inadequate in order to allege adequately a deprivation of [his] due process." *Id*., at 316. Wood, though, still must show a denial of the basic requirements of notice, explanation of the employer's evidence and opportunity for a hearing.

There are two additional matters that need to be raised before closing this claim of denial of due process. First, Wood objects to dual use of the pretermination notice and hearing for both his suspension without pay and later termination from employment. The October 26, 2005 Notice of Intent to Discipline forewarned of discipline "which could result in termination." (Defendants' Ex. 11).  Although Wood was at first suspended and later fired, no new matters were considered. Compare *Singfield*, 389 F.3d at 560, 566 (Singfield was not given notice and explanation of charges prior to his termination following suspension. Termination of his employment was based on results of investigation that occurred during his suspension, and new notice explaining these new matters was not provided.). Wood was notified of possible termination from employment and the same hearing decision was the basis for defendants' actions. The fact that suspension was followed without a new notice and new hearing was not a violation of federal due process.  While Wood's protected property interest in his job was created by state law, the procedures necessary to satisfy due process are defined by the federal Constitution. *Silberstein*, 440 F.3d at 315, citing *Loudermill*, 470 U.S. at 541.  Accordingly, defendants' "piggyback" discipline and termination from employment was not a denial of procedural due process.

28

Second, the October 13, 2005 suspension with pay was not preceded by notice, explanation and opportunity to be heard. This oversight arguably is compounded by the fact that suspension *with pay* is not one of the forms of discipline recognized in personnel policy and procedure manual. The personnel manual sections provided by defendants speak only of suspension "without pay." (See Section 8.2, Defendant' Ex. 1). Nonetheless, this action even assuming that it constituted a random and unauthorized act, as in *Walsh*, be safely said to have been a due process violation that was "harmless beyond a reasonable doubt." *Tennessee Secondary School Athletic Ass'n v. Brentwood Academy,* - U.S. -*,* 127 S.Ct. 2489, 2497, 168 L.Ed.2d 166 (2007). Wood has not shown any consequence from this action that effected his employment directly or indirectly.[6]

Finally, if Wood is alternatively claiming a *substantive* violation of federal due process, his facts fail to present such a claim. As a general rule, "the termination of public employment does not constitute a denial of substantive due process." *Young v. Twp. of Green Oak,,* 471 F.3d 674, 684 (6th Cir.2006): and see *Sutton v. Cleveland Bd. of Educ*., 958 F.2d 1339, 1351 (6th Cir.1992). Wood has produced nothing to elevate this claim to one of substantive due process. Wood's evidence to support his Count IV does not present any genuine issues for trial.

***Fifth Amendment Claim- Count V:***

Wood claims in Count V that the defendants suspended and terminated his employment in valuation of this Fifth Amendment rights. "[A] State may not impose substantial penalties because

---

[6] Moreover, Ohio provides adequate postdeprivation process, which affords all process that is due. See *Walsh*, 424 F.3d at 513-514; *Collyer v. Darling*, 98 F.3d 211, 227-228 (6th Cir. 1996).

29

a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135 - 2136, 53 L.Ed.2d 1 (1977). Wood claims that defendants were unconstitutionally compelling him to provide statements which were not immunized in violation of his Fifth Amendment protection from self-incrimination. See *Hade v. City of Fremont,* 246 F. Supp.2d 837, 847 (N.D. Ohio 2003) ("government cannot penalize assertion of the constitutional privilege against self-incrimination by imposing sanctions to compel testimony which has not been immunized."), quoting *Lefkowitz v. Cunningham*, 431 U.S. at 806; and see *Sanitation Men v. Sanitation Comm'r*, 392 U.S. 280, 284, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (noting that the state cannot present employees with "a choice between surrendering their constitutional rights or their jobs").[7] However, Wood has not demonstrated that it was his protection against self-incrimination that was the basis for not speaking with Det. Brown or appearing at his pretermination hearing.

---

[7]  The Supreme Court in *Minnesota v. Murphy* summarizing *Sanitation Men, Lofkowitz,* and *Gardner* stated:

In each of the so-called "penalty" cases, the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions "capable of forcing the self-incrimination which the Amendment forbids." *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977). In most of the cases, the attempt to override the witnesses' privilege proved unsuccessful, and the Court ruled that the state could not constitutionally make good on its prior threat. *Lefkowitz v. Turley*, 414 U.S., at 79-84, 94 S.Ct., at 323-326; *Sanitation Men v. Commissioner of Sanitation*, 392 U.S. 280, 283-284, 88 S.Ct. 1917, 1919-1920, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick*, 392 U.S. 273, 278-279, 88 S.Ct. 1913, 1916-1917, 20 L.Ed.2d 1082 (1968). These cases make clear that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, supra, 431 U.S., at 805, 97 S.Ct., at 2135. Occasionally, however, an individual succumbed to the pressure placed upon him, failed to assert the privilege, and disclosed incriminating information, which the state later sought to use against him in a criminal prosecution. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), was such a case, and the Court held that an individual threatened with discharge from employment for exercising the privilege had not waived it by responding to questions rather than standing on his right to remain silent. *Id*., at 498-499, 87 S.Ct., at 619-620.

*Id.,* 465 U.S. 420, 434-435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984)

30

In *Buckner v. City of Highland Park*, 901 F.2d 491 (6th Cir. 1990), addressing Fifth

Amendment protections *viz-a- viz Loudermill* due process, the court explained:

> The employer may ask 'questions specifically, directly, and narrowly relating to the performance of his official duties,' and demand an accounting even though the answers tend to incriminate." *D'Aq*uisto *v. Washington,* 640 F.Supp. 594, 622 (N.D.Ill.1986) (quoting *Gardner v. Broderick*, 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968)) (other citations omitted). Thus, while the City may not use coerced answers in a criminal proceeding against the employee, it may terminate that employee for refusing to answer, so long as that termination is not solely due to the invocation of the right against self-incrimination.

*Buckner v. City of Highland Park,*  901 F.2d at 49.

There was concern on Mr. Thompson's part, as Wood's attorney, over  Fifth Amendment

protection as evidenced by Ms. Rowlands' October 21, 2005 letter. However, Wood's Exhibit M

shows that Wood intended to appear, but it was conditioned on the assistance of counsel. Mr.

Thompson was unavailable so Wood engaged Mr. Burdon. ( *Id*., TR. 38-39). Wood testified that Mr.

Burdon attempted to set up a meeting with Det. Brown, but it inexplicably was not scheduled.  Wood

stated , "I was willing and wanted to straighten out what their concerns were." (TR. 40).


The facts presented by Wood do not present a matter of Fifth Amendment concern over a

relinquished right to silence. There is therefore no reason to delve into *Garrity v. New Jersey*, 385

U.S. 493, 87 S.Ct. 17 L.Ed.2d 562 (1967), and discuss immunization and warning. Wood testified

at his unemployment hearing that counsel was to directly arrange for his interrogation. ( Plaintiff's

Ex. M, TR. 40). When Wood later declined to appear at the predisciplinary conference, he did for

reasons of unfairness, false accusations, his success in obtaining a reversal of a prior suspension, and

because counsel "was not available to advise me, or attend." (Defendants' Ex. 12). "[N]owhere does

31

plaintiff explain that he is refusing to answer questions on the basis of his Fifth Amendment right."
*Morgan v. City of Columbus,* 1993 WL 389954, 7 (6th Cir.1993).  Wood's conduct was not due to
his assertion of Fifth Amendment protection from self-incrimination, but is assertion of a Fifth
Amendment right to assistance of counsel in the meeting and later at the hearing. There is not now
a concern over a hypothetical issues that could have arisen if criminal use of the interrogation had
occurred, and Wood was not entitled to counsel at the pretermination hearing. See *Speiser v. Engle,*
107 Fed.Appx. 459, 461, 2004 WL 1745785, 2 (6th Cir.2004)(Speiser would not have been entitled
to have his attorney present at a pre-disciplinary hearing-due process requires only "notice and an
opportunity to respond" prior to deprivation of job benefits.").  Wood has not put forth genuine
issues of material fact to show that his suspension and termination were solely due to the invocation
of the right against self-incrimination.


### First Amendment Infringement - Count VI:

In a nutshell, defendants argue that there was no matter of public concerns at issue in the
discipline taken against Wood.  Wood had filed three grievances related to age discrimination
seeking promotion training and a pay raise.  A matter of public concern is "any matter of political,
social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684,
75 L.Ed.2d 708 (1983). The "speech" in issue must address a matter of public concern and that
concern ordinarily does not extend to a public employee's speaking as an employee on matters
concerning only his personal interest. *Gragg v. Kentucky Cabinet for Workforce Development,* 289
F.3d 958, 965-66 (6th Cir.2002)("The point of the protection afforded public employees is to allow
public employees a voice on issues actually affecting and interesting the community at large.");

32

citing *Connick,* at 147, 103 S.Ct. 1684. Internal grievances that are unrelated to larger issues of

government policy are not matters of public concern. *Id.* Wood implicitly concedes this point by not

addressing defendants' argument. There are no genuine issues of fact in dispute to warrant this claim

going to trial.

### "*Monell*" Claim- Count VII:

Wood alleges that in violating his Fifth Amendment rights, retaliating against him for

protected speech and denying him due process, defendants engaged in unlawful policies and

practices in violation of *Monell v. Dept. Of Social Services*, 436 658 (1978). (2ⁿᵈ Amended

Complaint ¶67). *Monell* held that a municipal "body may therefore be sued directly if it is alleged

to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik,* 485

U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107  (1988), quoting,  *Monell v. New York City Dept.*

*of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

Defendants contend that *Monell* merely defined the limits of municipal liability under 42

U.S.C. §1983, and did not establish a separate cause of action, and further Wood has not shown any

depravation representing policy or custom of Summit County. Wood agrees that he is not attempting

to raise a separate cause of action.  He argues that the employment decisions made in his case were

made by the Fiscal Officer, the official decision-maker by not permitting him to remain silent in

instances of possible criminal jeopardy, the "piggyback" use of the pretermination hearing for both

unpaid leave and termination of employment, and retaliation.  What Wood apparently seeks is a

33

judgment against Summit County and John Donofrio in his official capacity concerning the prior allegations in the second amended complaint.

To prevail under §1983, plaintiff must establish that a "person" acting under color of state law deprived him of his right secured by the Constitution. See *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005); and see *Inyo Cty, Cal. v. Paiute-Shoshone Indians . . .*, 538 U.S. 701, 708, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003) ("[§1983] permits 'citizen[s]' and 'other person[s] within the jurisdiction of the United States to seek legal and equitable relief from 'person[s]' who, under color of state law, deprive them of federally protected rights."). County government has long been considered to be a form of local government equivalent to municipal government. See *Lincoln Cty. v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890). The idea that a county was a "person" under 42 U.S.C. §1983 flowed implicitly from *Monell's* holding that a municipality was a "person" for purposes of §1983 and that Congress intended §1983 to apply to municipalities and "other local government units." See *Monell,* 436 U.S. at 691; *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997).

With respect to the individual defendant John Donofrio named in his official capacity, this action is equivalent to a suit against the county itself. See *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Johnson v. Karnes*, 868 F.3d 877 (6th Cir. 2005), 398 F.3d at 877; *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

34

There is no vicarious liability under *respondeat superior* against a government entity for the acts of its employees. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); and see *Bd. of Cty. Com'rs of Bryan Cty.*, 520 U.S. at 405-09; *Polk Cty. v. Dodson*, 454 U.S. 312, 325-26, 201 S.Ct. 445, 453-54, 70 L.Ed.2d 509 (1981); *Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1997, 103 L.Ed.2d 412 (1989). "[A] municipality cannot be held liable solely because it employs a tort-feasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Alioto v. City of Shively, Ky.*, 835 F.2d 1173, 1175 (6th Cir. 1987). Congress did not intend a municipality to be liable for its employees' discretionary action unless it was the product of official municipal policy, as established by custom or policy, including a policy of deliberate indifference.  See *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 118, 112 S.Ct. 1061, 1065; 117 L.Ed.2d 261 (1992); *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986); *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989).  The government employee's "discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of discretion."  *Pembauer*, 475 U.S. at 481-482; *Miller*, 408 F.3d at 814. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"  *Board of County Com'rs*, 520 U.S. at 404, 117 S.Ct. at 1388.

Plaintiff must show that a county policy-maker participated in the decisions in issue in some manner, or implicitly authorized, approved or knowingly acquiesced in unconstitutional conduct.

*Knott*, 418 F.3d at 574; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845

(1984).  Because liability cannot be based on *respondeat superior* liability, resolution turns on

whether plaintiff can demonstrate policy or custom.  See *Johnson*, 398 F.3d at 877-78; *Petty*, 478

F.3d at 347-48.  Actions taken by John Donofrio under his "final policy making authority" arguably

did subject the county government to §1983 liability:

> We held in *Monell*, 436 U.S., at 694, 98 S.Ct., at 2037-2038, that a local government
> is liable under § 1983 for its policies that cause constitutional torts. These policies
> may be set by the government's lawmakers, "or by those whose edicts or acts may
> fairly be said to represent official policy." *Ibid.* A court's task is to "identify those
> officials or governmental bodies who speak with final policymaking authority for the
> local governmental actor concerning the action alleged to have caused the particular
> constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.*,
> 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989).

*McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-785, 117 S.Ct. 1734, 1736, 138 L.Ed. 2d 1

(1997); and see *City of St. Louis v. Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924 ("only those

municipal officials who have 'final policymaking authority' may by their actions subject the

government to § 1983 liability").


Nonetheless, Wood now concedes that this count does not in itself state a claim, and Wood

has not demonstrated retaliation in violation of the ADEA, or violation of his civil rights under

*Loudermill* and the 14th Amendment, or the First and Fifth Amendments. Consequently he has not

demonstrated material issues of fact to warrant presentation of municipal liability with respect to

Summit County to the jury.


**Hostile Work Environment-Count VIII:**

36

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1)." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). Defendants concede that Wood hypothetically may raise a hostile work environment claims based on age discrimination. See *Crawford v. Medina General Hosp*., 96 F.3d 830, 834 (6th Cir. 1996). However, Defendants are correct in pointing out that this is a new claim that was not exhausted before the EEOC.  Wood's response is perplexing. He relies on notice pleading principles and the claims that due process, age discrimination and Fifth Amendment violations combine to create a hostile work environment.  If Wood were basing his claim on some separate state tort , then his argument would be more sensible, but he clearly states that this claim is a matter of federal law.

As a matter of federal law it is one of the claims available under Title-VII of the Civil Rights Act of 1964, and as defendants concede it may also be a matter under the ADEA.  Either way it is a claim that must be exhausted pursuant to federal ADEA or Title-VII procedures. *Id*. Title-VII), and see *Wheelwright v. Clairol, Inc*., 770 F. Supp. 396, 399 (S.D. Ohio 1991)(ADEA), citing, *Vinson v. Ford Motor Co.,*  806 F.2d 686, 688 (6th Cir.1986). Again, filing the ADEA charge with the EEOC is a jurisdictional prerequisite to the filing of a civil action under ADEA. See 29 U.S.C. § 626(d): *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). What Wood lacks was a statement concerning ongoing instances of a hostile work environment due to age discrimination. Compare *Randolph,* 453 F.3d at 732-

733("Hostile work environment claims by their very nature require ongoing conduct."). Wood's "particulars" to the EEOC described only what he deemed to be retaliation due to suspension, discharge and failure to remit vacation pay. Wood did not describe instances of an ongoing hostile work environment. Wood has not demonstrated the existence of a federal common law action of hostile work environment that exists independently from the above cited statutory provisions to permit him to bypass the exhaustion requirement.  Consequently, there are no genuine issues of material fact in dispute to warrant this claim going to trial.


*Intentional Infliction of Emotional Distress - Count IX:*

Ohio's workers' compensation scheme, in general, immunizes employers in Ohio from all but intentional torts.  See Ohio Rev. Code § 4123.74. Intentional infliction of emotional distress (IIED) is no exception and stands as an actionable  recourse against an employer under state law. Moreover, it has been excepted from general statutory definition of "deliberate intent" which the state legislature has imposed under statute.[8]

---

[8]  Ohio Rev. Code §2745.01 as amended and  effective April 7, 2005, requires the courts to define "substantially certain" belief that injury would occur, as "deliberate intent" to injure and like its predecessor version. may well be on its way to being held  unconstitutional by Ohio's Supreme Court as exceeding the legislature's authority. See *Kaminski v. Metal & Wire Prods. Co.,*  175 Ohio App.3d 227, 886 N.E.2d 262 (Ohio App. 7 Dist.,2008); *Harris v. Sunoco, Inc.,* 137 Fed. Appx. 785, 787 n. 1 (6th Cir. 2005). The current version, though excepts "intentional infliction of emotional distress not compensable under Chapters 4121 and 4123." Ohio Rev. Code § 2745.01(D). Wood's companion state claims were brought under Chapter 4112, so regardless of the constitutionality of the amended provision, state common law applies.

38

A claim of intentional infliction of emotional distress (IIED) requires plaintiff to show, "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994); *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 462 N.E.1d 392 (1984). Wood must present evidence that defendants "caused or exacerbated his emotional distress." *Phung*, 71 Ohio St.3d at 411.  Ohio's Supreme Court has stressed that IIED, as defined in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), and *Reamsnyder v. Jaskolski*, *supra*, requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Reamsnyder*, 10 Ohio St.3d at 153. Wood claims that it was outrageous for defendants not to promote him, give him raises, initiate administrative charges, escort him from the office, and then disciplining him as the events unfolded in October through December 2005.

Causing the employee to be escorted from the workplace by a uniformed law enforcement officer and initializing a criminal investigation of that employee are not acts of outrageous conduct beyond all possible bounds of decency. See *Dixon v. Northridge Local School Dist. Bd. of Edn.,*  2008 WL 2572103, 11 (Ohio App. 5 Dist.). Likewise, evidence supporting age discrimination or a hostile work environment does not in itself establish outrageous conduct. See  *Roush v.  KFC Nat. Managment Co.*, 10 F.3d 392, 400-401 (6th Cir.

39

1993), *cert. denied*, 513 U.S. 808 (1994)(age discrimination); *Mowery v. Columbus*,  2006 WL

620902, 14 (Ohio App. 10 Dist.)(hostile work environment). In short,  Wood has not established

conduct "beyond all possible bounds of decency" that warrants presentation of this state law

claim to a jury.


Summit County adds that it is immune under Ohio's Political Subdivision Tort Liability

Act because there is no recovery against a political subdivision for an intentional tort. Summit

County is clearly correct regarding the one state common law tort present is this action of

intentional infliction of emotional distress. See *Hubbard v. Canton City School Bd. of Edn*.,  97

Ohio St.3d 451, 453, 780 N.E.2d 543, 545-546 (2002), citing *Wilson v. Stark Cty. Dept. of*

*Human Serv.*, 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (1994)( "This court has reviewed R.C.

2744.02(B)(5)  in the context of intentional torts and concluded that "[t]here are no exceptions to

immunity for the intentional torts of fraud and intentional infliction of emotional distress * *

*."); *Hout v. City of Mansfield*, 550 F. Supp.2d 710, 744(S.D. Ohio 2008).


### Qualified Immunity:

Government officials may be "held liable in their personal capacity for actions they take in

their official capacity."*Hafer v. Melo.* 502 U.S. 21, 27,  112 S. Ct. 358, 116 L.Ed. 2d 301 (1991);

*Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003). Defendant John Donofrio is sued in his

personal or  individual capacity and contends that he is shielded from plaintiff's claimed

violations of civil rights due to qualified immunity. Qualified immunity protects government

40

officials from individual liability due to performance of discretionary functions unless plaintiff asserts the official  violated a "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Knott*, 418 F.3d at 571.

In this circuit, a three step approach has emerged for evaluating the affirmative defense of qualified immunity.  See *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 362 (6th Cir. 2007); *Perez v. Oakland Cty.*, 466 F.3d 416, 436 (J. Moore concurring/dissenting 6th Cir. 2006); *Sample v. Bailey*, 409 F.3d 689, 696 n. 3 (6th Cir. 2005); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  First, the court considers whether the evidence in light most favorable to the plaintiff shows a constitutional right has been violated.  If no constitutional or statutory rights have been violated then that official must be dismissed at this threshold step obviously became no civil rights violation has occurred.  *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, the court considers, if a violation has been demonstrated, whether the right was clearly established.  *Haynes,* 474 F.3d at 362.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005), quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Knott*, 418 F.3d at 571.  The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of clearly established constitutional rights."  *Haynes*, 474 F.3d at 362; *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).  "[I]f the right is clearly

41

established, the conduct at issue would also be objectively unreasonable," the second and third steps would be collapsed, "in an effort to avoid duplicative analysis." *Haynes*, 474 F.3d at 362; *Swiecicki*, 463 F.3d at 498. The burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity. *Haynes*, 474 F.3d at 362; *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999).

Wood has not demonstrated that a constitutional right has bee violated, so at this threshold point of sequential inquiry, defendant John Donofrio should be dismissed from suit in his individual or personal capacity.

### CONCLUSION AND RECOMMENDATION

For the forgoing reasons, Defendants' motion for summary judgment should be granted with judgment entered for defendants and the case dismissed.

James S. Gallas
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice. Failure to file objections within the specified

42

time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).